IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAULA HOWARD, | ) | |
| | ) | No. 21-cv-3573 |
| Plaintiff, | ) | |
| | ) | Judge Jorge L. Alonso |
| v. | ) | |
| | ) | |
| PROVISO TOWNSHIP HIGH SCHOOL BOARD OF EDUCATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum Opinion and Order

Defendant Proviso Township Board of Education filed a motion to enforce a settlement agreement that it contends the parties entered into at a settlement conference on April 11, 2022, mediated by an administrative law judge with the Illinois Human Rights Commission. Plaintiff Paula Howard disagrees that the parties reached a valid agreement. For the reasons below, the Court grants Proviso's motion.

## Background

Howard filed this case on July 7, 2021, alleging that she was subjected to race and sex-based discrimination in violation of Title VII of the Civil Rights Act of 1964 while employed as a teacher at Proviso High School. Before that, on March 4, 2013, she filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"). In that charge, she alleged that she was subjected to harassment and a hostile work environment between January 22, 2013, and March 1, 2013. The IDHR investigated this charge and, on April 15, 2014, filed a complaint on Howard's behalf before the Illinois Human Rights Commission (the "Commission").

The Commission case was set to proceed to a public hearing (*i.e.*, a trial) on May 9, 2022. Before the hearing, however, the parties participated in a settlement conference on April 11, 2022, mediated by Administrative Law Judge William J. Borah. Howard concedes that she was present at the conference with her attorney. Proviso was represented by its outside counsel as well as William Gleason, general counsel for Proviso's Board of Education. At the conclusion of the conference, which lasted all day, the parties' attorneys executed a "Confirmation of Settlement" stating the parties were able to reach an agreement on all material terms in dispute and that all such terms were raised, discussed, negotiated, and agreed to at the conference. The document further stated that the parties may elect to create a more comprehensive written agreement memorializing the specific agreed-upon terms, but advised the parties that, because of the settlement, no public hearing would occur even if a party later wished to withdraw from the settlement.

After the conference, but that same day, Proviso's attorney emailed Howard's counsel reiterating the alleged agreement's terms, which included: (1) a monetary sum of $92,500 (inclusive of all fees and costs with each party to bear their own fees) payable to Howard; (2) dismissal with prejudice of all of Howard's claims, including both the Commission and federal actions; (3) a neutral job reference; (4) a confidentiality agreement; (5) that Howard would not be restricted from testifying in court or administrative proceedings if she received a subpoena; (6) ten days for the parties to cure any breach of the agreement; and (7) a waiver of reapplication by Howard. Howard's attorney did not respond.

On April 12, 2022, Chief Administrative Law Judge Weinthal entered an order congratulating the parties on settlement and requiring Proviso to inform Judge Borah once the Board of Education approved the settlement. The next day, Howard's attorney emailed Proviso's

attorney asking about the status of the Board's April 12th meeting and the draft agreement and release. Proviso's attorney responded that they were "all good" and sent a draft release agreement. On April 14, 2022, Judge Weinthal entered another order advising that the Board of Education approved the settlement and striking the public hearing set for May 9-12, 2022. On April 18, Howard's attorney sent her the draft release, which included allocations for attorneys' fees not contained in the original draft sent by Proviso's counsel.

On May 24, 2022, Howard's counsel filed motions to withdraw in both the Commission and federal cases. During the hearing in this case, counsel explained that it was her position that the parties had a successful settlement conference, but that Howard disagreed. Both motions to withdraw were granted. Proviso then moved to enforce the settlement in both this case and the Commission case. On September 14, 2022, Chief Judge Weinthal entered an order in Howard's Commission case granting Proviso's motion to dismiss based on the existence of a settlement, finding, over Howard's objection, that the parties reached a binding settlement at the April 11th settlement conference.

## Discussion

Whether a Title VII settlement was knowing and voluntary is a question of federal law, *Pierce v. Atchison, Topeka and Santa Fe Ry. Co.,* 65 F.3d 562, 571 (7th Cir. 1995), but the question of whether the parties entered into an enforceable oral settlement agreement is governed by state law, and oral settlement agreements are enforceable contracts under Illinois law, *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002); *see also Pohl v. United Airlines*, Inc., 213 F.3d 336, 338 (7th Cir. 2000) ("Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law."). Accordingly, federal courts have the power to enforce oral settlement agreements where "'there is clearly an

offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement.'" *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007) (quoting *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995)). Whether there was a meeting of the minds "depends on the parties' objective conduct, not their subjective beliefs." *Dillard*, 483 F.3d at 507. This meeting of the minds need not encompass every single element of the settlement; rather, there must be a "meeting of the minds on all material terms." *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001).

Here, Proviso presents overwhelming evidence that the parties reached a knowing and voluntary agreement to settle this and the Commission case at the April 11th settlement conference. Both parties were represented by counsel at the conference and the parties, through their attorneys, executed a "Confirmation of Settlement" document establishing that there was an offer, acceptance, and a meeting of the minds as to all material terms. *See Baptist v. City of Kankakee*, 481 F.3d 485, 490-91 (7th Cir. 2007) (holding that where plaintiff is represented by chosen counsel throughout negotiations and settlement, the settlement agreement is presumptively informed and willing, absent circumstances such as fraud or duress).

In an attempt to skirt the agreement, Howard advances several arguments. None are persuasive. The Court addresses each argument in turn.

### I. Jurisdiction

First, Howard suggests that the Court lacks jurisdiction to rule on Proviso's motion. This is incorrect. The Court has federal-question jurisdiction over this case because Howard brings claims under Title VII of the Civil Rights Act of 1964. *See* Compl., ECF No. 1; 28 U.S.C. §1331. Although the settlement was reached in a mediation conducted by an administrative law judge,

nothing about that situation prohibited the parties from agreeing to globally settle all of Howard's claims.

Howard conflates the Court's prior statements about the relationship between this case and the Commission case in her argument. To be certain, the Court previously ruled that the Commission and federal cases did not present the same claims and therefore a stay in this case was not warranted. *See* Mem. Op. and Order, ECF No. 18. But if the parties reached an agreement to settle the claims in this case, as Proviso argues, the Court has the authority to enforce that agreement. *See Dillard*, 483 F.3d at 507.

## II.     Failure to comply with Court order

Second, Howard's contention that Proviso did not attend the settlement conference or comply with court-ordered procedures with respect to the conference is without merit. As the record establishes, both through the affidavit of attorney Daniel Polsby and the order issued by Chief Administrative Law Judge Weinthal, Proviso was represented at the conference by its attorneys as well as the general counsel for the Board of Education.

Even if Proviso's litigation attorneys were not authorized to enter into a settlement agreement—and Howard has not presented any evidence to contradict Proviso's position that its attorneys did, in fact, have such authority—Proviso's general counsel had authority to enter into the settlement agreement. The duties of Proviso's general counsel are established and governed by statute, *i.e.*, the School Code, 105 ILCS 5/34-11. And the School Code states that the board shall appoint a general counsel who "shall have charge and control, subject to the approval of the board, of the law department and of all litigation, legal questions and such other legal matters as may be referred to the department by the board or by the general superintendent of schools." 105

ILCS 5/34-11. Thus, Proviso's general counsel had full authority to settle Howard's claims on Proviso's behalf.

### III. Confirmation of Settlement

Howard's third argument that the "parties" did not sign the Confirmation of Settlement is equally meritless. For starters, under agency law, Howard is bound by the actions of her attorney. *Dunphy v. McKee*, 134 F.3d 1297, 1300 (7th Cir. 1998); *see also NC Illinois Trust Co. v. First Illini Bancorp., Inc.*, 323 Ill App. 3d 254, 265 (Ill. App. Ct. 2001); *In re Marriage of Marr*, 264 Ill. App. 3d 932, 935 (Ill. App. Ct. 1994) ("Generally, a client is bound by the acts or omissions of his attorney within the scope of the attorney's authority. In the absence of affirmative evidence to the contrary, an attorney of record is presumed to have authority to settle a case in open court. Moreover, where a party is present in court and permits his attorney to act on his behalf, the party may not subsequently deny his attorney's apparent authority."). But more importantly, the fact that the parties themselves did not sign the Confirmation of Settlement does not preclude the Court from enforcing the oral agreement that Howard and Proviso reached during the conference. If anything, the Confirmation of Settlement confirms that the parties themselves reached an oral agreement during the conference.

### IV. Authorization to settle

Fourth, Howard argues that her attorney did not have authority to settle the case. Under Illinois law, an attorney has no authority to settle a client's claim absent their express authorization to do so. *Webster v. Hartman*, 195 Ill.2d 426, 433 n.1, 255 Ill. Dec. 476, 749 N.E.2d 958 (2001) (citing *Danziger v. Pittsfield Shoe Co.*, 204 Ill. 145, 149, 68 N.E. 534 (1903)); *Brewer v. National R.R. Passenger Corp.*, 165 Ill.2d 100, 105–106, 208 Ill. Dec. 670, 649 N.E.2d 1331. (1995). An attorney's authority to agree to an out-of-court settlement will not be

6

presumed, and the burden of proof rests on the party alleging authority to show that fact. *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 1000 (7th Cir.2001) (citing *Brewer*, Ill.2d at 105–06, 208 Ill. Dec. 670, 649 N.E.2d 1331); *Webster*, 195 Ill.2d at 433 n. 1, 255 Ill. Dec. 476, 749 N.E.2d 958.

Here, Proviso carries its burden. Again, the record demonstrates that Howard herself was present at the conference and agreed to the settlement. Indeed, the administrative law judge asked both the parties and their respective counsel if they agreed to the settlement's terms, and both agreed. *See Howard v. Proviso Township High Schools Dist. 209*, ALS Case No. 14-0148 (Ill. Human Rights Comm'n Sept. 14, 2022) (ECF No. 41-1). In addition, the parties' attorneys executed the Confirmation of Settlement document. The chief administrative law judge also issued several orders indicating that the parties agreed to settle the claims. Howard's attorney never objected to the terms as recited in the email from Proviso's counsel on April 11. The meeting of the minds factor rests on the parties' objective conduct, not subjective beliefs. *Dillard*, 483 F.3d at 507. And here, the objective evidence—the parties' voluntary attendance at the settlement conference, the Confirmation of Settlement document, and the orders from the various administrative law judges—points to an agreement.

Howard, in opposition, cites to *Magallenes v. Illinois Bell Telephone Co.*, 535 F.3d 582 (7th Cir. 2008), to support her argument. In that case, the plaintiff sued Illinois Bell for alleged violations of Title VII of the Civil Rights Act, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. *Id.* at 583. After her deposition, the plaintiff's attorney called his client and suggested that they settle the case, apparently believing the deposition did not go well. *Id.* The attorney claimed that he received authority to settle the case for $20,000, but the plaintiff claimed she did not give any such authority and wanted to proceed to trial. *Id.* The attorney had a subsequent call with his client and, he claimed, received authority to settle the

7

case for $10,000. *Id.* The attorney negotiated terms with the defendant's attorney and reached an agreement. *Id.*

The plaintiff, however, refused to sign the agreement or pay the additional retainer that the lawyer requested after her deposition. *Id.* Ultimately, the Seventh Circuit ruled that the defendant did not carry its burden to show that the plaintiff had given her attorney authority to settle the case. *Id.* at 584. Importantly, the court noted that the record was devoid of any indication that the plaintiff had authorized her attorney to settle the case. *Id.*

Several facts distinguish this case from *Magallenes*. For one, Howard was present at the settlement conference and, based on all the evidence in the record, agreed to settle the claims herself rather than just through an attorney. Also, the agreement was reached during a conference mediated by an administrative law judge, who issued several orders that the parties reached an agreement. The agreement was memorialized in a Confirmation of Settlement document signed by the attorneys. This is a far-cry from *Magallenes*, where the alleged discussions took place outside the courtroom and without any record whatsoever to indicate that an agreement was reached. To the contrary, several facts show that the parties settled this case at the conference and that Howard herself agreed to the settlement.

Howard also takes issue with her former attorney's revised agreement, which included a provision for a specific amount of attorney's fees payable to her attorney. Howard argues that this draft was represented to her as the final agreement, not the original draft forwarded by Proviso's attorney. Even if Howard disputes including these fees in the release, that provision is not a material term and does not invalidate the agreement reached at the conference. Instead, that is a separate issue to be resolved between Howard and her former attorney elsewhere.

V.  **Older Workers Benefit Protection Act**

Fifth, Howard argues that the agreement fails to meet the requirements of the Older Workers Benefit Protection Act ("OWBPA"). In November 1991, Congress amended the Age Discrimination in Employment Act of 1967 ("ADEA") by enacting the OWBPA. Among other things, the OWBPA sets forth statutory restrictions limiting the way employees may waive their rights and claims under the ADEA. *See* 29 U.S.C. § 626(f). The OWBPA provides that an employee may not waive his or her ADEA rights and claims unless such waiver is "knowing and voluntary." 29 U.S.C. § 626(f)(1).

Pertinent to Howard's argument, a waiver granted in conjunction with an exit incentive or employment termination program is knowing and voluntary if, at a minimum, "the individual is given a period of at least 21 days within which to consider the agreement" and "the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired[.]" 29 U.S.C. §626(f)(1)(F)-(G). The OWBPA further states that:

> A waiver in settlement of a charge filed with the Equal Employment Opportunity Commission, or an action filed in court by the individual or the individual's representative, alleging age discrimination of a kind prohibited under section 623 or 633a of this title may not be considered knowing and voluntary unless at a minimum--
>   (A) subparagraphs (A) through (E) of paragraph (1) have been met; and
>   (B) the individual is given a reasonable period of time within which to consider the settlement agreement.

29 U.S.C. §626(f)(2).

The Court finds that the OWBPA does not make the agreement unenforceable. The Court agrees with Proviso that *Harmon v. Wisconsin Reg'l Training P'ship*, 833 F. App'x 1 (7th Cir. 2020) is on point. In *Harmon*, the plaintiff, like Howard, attended a settlement conference with

9

her attorney where she and the defendant orally agreed to resolve the pending claim for race-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. *Id.* at *2. A few days later, after the plaintiff discharged her attorney, the defendant emailed a copy of the proposed written settlement to plaintiff directly. *Id.* at *2-3. It included a standard provision under the ADEA giving the plaintiff 21 days to review the offer and seven days after acceptance to revoke. *Id.* at *3. The plaintiff refused to sign explaining that "after further consideration" she "decided not to accept." *Id.*

The Seventh Circuit upheld enforcement of the oral agreement. *Id.* at *5. The court held that the plaintiff's reliance on the OWBPA was misplaced because she "never claimed (in [][the] lawsuit or in an administrative charge) discrimination based on age, and at the time the settlement was reached, any prospective charge or lawsuit would have been untimely." *Id.* She, therefore, had no claim under the ADEA to release. *Id.*

So too here. This case centers around allegations of sex and race-based discrimination, and the Commission case centers around allegations of creating a hostile work environment in retaliation of previously filed discrimination charges. *See* Mem. Op. and Order, ECF No. 18. Accordingly, Howard did not have an ADEA claim to release. What's more, even assuming these provisions applied, the 21-day deadline passed long before Howard conveyed that she wanted to revoke the agreement. She accepted the oral agreement within the review period and did not notify Proviso that she intended to revoke until, at the earliest, May 24, 2022, when her attorney filed the motions to withdraw.

## VI. Illinois Workplace Transparency Act

Sixth, Howard argues that the agreement is not enforceable in light of the Illinois Workplace Transparency Act ("IWTA"). The purpose of the IWTA is "to ensure that all parties

to a contract for the performance of services understand and agree to the mutual promises and consideration therein, and to protect the interest of th[e] State in ensuring all workplaces are free of unlawful discrimination and harassment." *See* 820 ILCS 96/1-5.

Like her OWBPA argument, Howard argues that the IWTA permitted her 21 days to review the "final draft" release and an additional seven days to revoke the agreement after execution. But again, even assuming these provisions apply, Howard accepted the agreement within the review period, which is permitted under the IWTA, *see* 820 ILCS 96/1-30(a)(5), and did not convey an intention to revoke the agreement until after the seven-day period expired.

To be sure, the IWTA requires that any settlement or termination agreement between an employee, prospective employee, or former employee and employer containing a confidentiality provision be reduced to writing and presented to the employee with 21 days to consider the agreement before execution. 820 ILCS 96/1-30(a). But the statute only affects the enforceability of a confidentiality promise between an employer and employee. *See* 820 ILCS 96/1-30(a). It further states that the only effect of an agreement that fails to comply with its provisions is that any promise of confidentiality becomes void and severable. 820 ILCS 96/1-30(c). The remainder of the agreement remains valid and enforceable. *Id.*

Ultimately, any concerns about confidentiality here are overblown because Proviso moved to enforce the agreement, thus making the agreement's terms a matter of public record. *See Union Oil Co. v. Leavell*, 220 F.3d 562, 567-68 (7th Cir. 2000). Accordingly, although the confidentiality provision is not enforceable, the remainder of the agreement remains valid.

**VII. Unclean Hands**

Finally, Howard argues that the agreement should not be enforced based on the equitable doctrine of unclean hands. The Court disagrees. The doctrine of unclean hands prevents

11

"wrongdoer[s] from enjoying the fruits of [their] transgression[s]." *Packers Trading Co. v. Commodity Futures Trading Comm'n*, 972 F.2d 144, 149 (7th Cir. 1992) (citation and internal quotation marks omitted). Howard premises much of her unclean hand arguments on the same contentions discussed above. But the Court rejected these arguments. Furthermore, the Court disagrees that any act of Proviso's counsel rises to the level of deception or bad faith. Simply put, the Court finds no reason to apply the equitable doctrine of unclean hands.

### VIII. Attorneys' Fees

In its motion Proviso also seeks repayment for attorneys' fees incurred in preparing its motion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (holding that the "bad faith exception" awards attorneys' fees where the non-moving party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons"). Proviso argues that such an award is warranted based on Howard's "demonstrated pattern of bad faith." Although Howard is incorrect about the agreement's enforceability, Proviso fails to demonstrate that she acted in bad faith as it relates to her response to the current motion. Being wrong does not necessarily correlate to acting in bad faith. Accordingly, the Court denies Proviso's request for attorneys' fees.

## Conclusion

The Court grants Proviso's motion to enforce [30] and motion to supplement its motion to enforce [41]. The Court denies Howard's motion to strike [35]. The Court finds that Howard and Proviso entered into a binding and enforceable settlement agreement with the following material terms: (1) Proviso shall pay Howard a total of $92,500; (2) Howard agreed to dismiss with prejudice all filed claims, including the claims in this case: *Howard v. Proviso Township High School SD 209*, 21-cv-3573; (3) Proviso will provide a neutral job reference providing last job title and dates of employment; (4) there is no restriction against Howard testifying in court or

administrative proceedings if she receives a subpoena; (5) the parties have 10 days to cure or attempt to cure a breach of the agreement; and (6) Howard shall never apply for any positions with Proviso. The Court further finds that these terms are sufficiently definite and enforceable. Proviso shall make the required payment to Howard within 60 days of this Order. All claims against Howard in this case are dismissed with prejudice. The Clerk of Court is directed to enter judgment in favor of Defendant. Civil case terminated.

**SO ORDERED.**  **ENTERED: January 23, 2023**

_____
**HON. JORGE ALONSO**
**United States District Judge**