**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Paula Howard,

Plaintiff,

v.

Proviso Township High School SD 209 Board of Education, *et al.*,

Defendants.

Case No. 21 C 3573

Judge Jorge L. Alonso

# **Memorandum Opinion and Order**

Petitioner law firm Shaw Legal Services, Ltd. ("SLS") has petitioned this Court to award it attorney's fees and costs related to its prior representation of Plaintiff Paula Howard, based either on a purported attorney's lien or on *quantum meruit*. For the reasons below, the Court grants in part and denies in part SLS's petition and awards SLS $30,833.33 on a *quantum meruit* basis.

## **Background**

In 2013, Plaintiff filed a charge of discrimination against the Proviso Township High School District 209[1] for violating Section 6-101(A) of the Illinois Human Rights Act. On May 8, 2014, Plaintiff and SLS entered into a written contingency-fee agreement for SLS to provide

[1] There does not appear to be a relevant distinction between "Proviso Township High School District 209," Defendant "Proviso Township High School SD 209 Board of Education," and Defendant "Proviso Township High Schools Board of Education." (*See* ECF No. 30 at 1.) The Court therefore refers to these entities collectively as "Defendant."

legal services to Plaintiff.[2] According to the agreement, SLS would be entitled to one-third of any amounts collected from Defendant. (Agreement, ECF No. 47-2.)

On July 2, 2021, Plaintiff, represented by SLS, sued Defendant for discrimination and retaliation in this Court under federal civil-rights law. (ECF No. 1.) On April 11, 2022, the parties participated in a settlement conference with an Illinois Human Rights Commission administrative law judge, which culminated in the parties agreeing to settle Plaintiff's federal and state cases for $92,500, to be finalized by a written settlement agreement. However, Plaintiff then refused to sign the written settlement agreement and demanded to move toward trial notwithstanding the parties' agreement to settle. Rather than carry out Plaintiff's instructions and risk sanctionable conduct before this Court and in Plaintiff's state action, SLS asked to withdraw from both cases. This Court granted SLS leave to withdraw on June 3, 2022, and SLS was granted leave to withdraw in the state case on July 1, 2022.

On July 6, 2022, Defendant moved to enforce the parties' April 11, 2022, settlement agreement, which the Court granted, finding that the parties had "entered into a binding and enforceable settlement agreement," including a $92,500 payment and dismissal of Plaintiff's claims in both cases, among other terms. (*See* ECF No. 43.) On October 14, 2022, SLS served a notice of attorney's lien on Defendant, claiming that SLS was entitled to one-third of Defendant's settlement payment under SLS's prior contingency agreement with Plaintiff. SLS's dispute with Plaintiff regarding its entitlement to a portion of Plaintiff's settlement resulted in Defendant depositing $57,478.48 with the Clerk of the Court pending the Court's resolution of the dispute.

---

[2] Neither SLS nor Plaintiff disputes the effectiveness of this agreement prior to SLS's later withdrawal from representation.

On February 22, 2023, SLS filed its pending petition to adjudicate and enforce its attorney's lien and for an award of attorney's fees and costs against Plaintiff, which has been fully briefed.

**Discussion**

SLS claims that it is entitled to $31,700.85 for fees and costs based on its purported attorney's lien related to its prior contingency-fee agreement with Plaintiff.[3] It alternatively claims that it should receive $55,050.48 under on a *quantum meruit* basis if it cannot recover on its attorney's lien. Plaintiff counters that SLS's purported lien is invalid, that SLS breached its professional duties and thus is ineligible for *quantum meruit* recovery, and that SLS's claim for fees was dismissed when the Court dismissed all claims against Plaintiff as part of enforcing the parties' settlement agreement.

At the outset, the Court reject's Plaintiff's claim that SLS cannot recover any portion of the settlement amount because the Court stated in enforcing the settlement agreement that "[a]ll claims against [Plaintiff] in this case are dismissed with prejudice." (Mem. Opinion & Order, ECF No. 43 at 13.) The Court's prior order was directed to the merits claims between the parties, and the pending payment dispute between Plaintiff and SLS had not yet been presented to the Court. The Court's order did not summarily preclude SLS's petition for attorney's fees and costs as requested in its pending petition, and the Court thus considers SLS's petition.

As to SLS's requested lien and fees, the Court agrees with Plaintiff that SLS's purported attorney's lien is invalid. Under the Illinois Attorneys Lien Act, "Attorneys at law shall have a lien upon all claims . . . which may be placed in their hands by their clients for suit or collection

[3] SLS does not explain how it is entitled to $31,700.85 even though one-third of Plaintiff's $92,500 settlement amount calculates to $30,833.33.

. . . for the amount of any fee which may have been agreed upon by and between such attorneys and their clients." 770 ILCS 5/1. "To enforce such lien, such attorneys shall serve notice in writing . . . upon the party against whom their clients may have such suits . . . claiming such lien and stating therein the interest they have in such suits[.]" *Id.*

SLS did not serve its notice of attorney's lien until months after it had withdrawn as Plaintiff's counsel—the attorney-client relationship between SLS and Plaintiff thus had terminated and SLS could no longer claim an attorney's lien over Plaintiff's settlement award based on its voided contingency-fee agreement. *See Matthews v. Homecomings Fin. Network, Inc.*, 264 Fed. Appx. 536, 538 (7th Cir. 2008) (affirming a finding of no attorney's lien where the attorney "did not provide notice of a lien to anyone until after both he and his client moved for his withdrawal *and* the court granted the motion" (emphasis in original)); *see also Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 457 (7th Cir. 2018) ("When a client fires an attorney who was retained on a contingency fee contract, that contract ceases to be effective and the attorney can no longer recover under it." (citation omitted)); *Will v. Nw. Univ.*, 378 Ill. App. 3d 280, 881 N.E.2d 481, 504 (Ill. App. Ct. 2007) ("When [attorney termination] occurs . . . in a contingent fee agreement setting, the agreement becomes void and the contingency term is no longer enforceable.").

Nevertheless, SLS is entitled to recover a reasonable fee for the legal services SLS provided to Plaintiff from 2014 until the parties' settlement in 2022 based on the doctrine of *quantum meruit*, which will "award the attorney as much as he deserves." *Will*, 881 N.E.2d at 504 (internal quotation marks and citations omitted); *see also Royce v. Michael R. Needle P.C.*, 950 F.3d 481, 485 (7th Cir. 2020) ("Irreconcilable differences and a breakdown of the attorney-client relationship provide good cause to withdraw that allows the attorney to recover the value

of his or her services in *quantum meruit*." (citations omitted)); *Dobbs*, 885 F.3d at 457–58 ("[T]he discharged attorney can recover a reasonable sum for services rendered based on *quantum meruit* ('as much as he deserves')."); *McGill v. Garza*, 378 Ill. App. 3d 73, 881 N.E.2d 419, 422–23 (Ill. App. Ct. 2007) (stating that an attorney may receive *quantum meruit* compensation based on "a complete breakdown in the attorney-client relationship," including regarding settlement).

To determine the value of the legal services rendered under a *quantum meruit* theory, a court considers "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client." *Id.* at 458. "[I]n cases in which an attorney who has done much work is fired immediately before a settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." *Rhoades v. Norfolk & W. Ry. Co.*, 78 Ill.2d 217, 399 N.E.2d 969, 975 (Ill. 1979).

Here, the *quantum meruit* factors favor awarding SLS the amount it would have received under its contingency-fee agreement with Plaintiff—one-third of Plaintiff's settlement amount. SLS has provided ample evidence via detailed daily time entries of the hundreds of hours required to litigate Plaintiff's federal and state cases since 2014, which culminated in an agreed settlement between the parties in April 2022. (*See* Pet. Ex. E, ECF No. 47-5.) SLS's supporting declaration of Caryn Shaw explaining SLS's billing practices further supports that one-third of the settlement amount is appropriate given Ms. Shaw and her colleagues' skill and experience and the customary charges for similar work (which SLS argues well exceeds a one-third

contingency rate). SLS's work on Plaintiff's cases from beginning to end resulted in the $92,500 settlement Plaintiff received from Defendant—of which SLS was due to receive one-third had Plaintiff not then refused to formalize the settlement agreement. SLS represented Plaintiff to the substantive end of Plaintiff's cases, and under the circumstances is entitled to receive the full contingency amount SLS and Plaintiff had agreed to before Plaintiff tried to renege on settlement after the case was effectively over. Awarding SLS one-third of Plaintiff's $92,500 settlement amount on a *quantum meruit* basis is appropriate. *See Dobbs*, 885 F.3d at 459 (finding "the district court appropriately concluded that the *quantum meruit* factors weighed in favor of awarding [the attorney] the entire contract fee as the reasonable value of services rendered"); *Will*, 881 N.E.2d at 506 (affirming award of "the entire contract fee of one-third as the reasonable value of its services rendered" where the attorney "performed a wealth of professional duties for which it should be reasonably compensated"); *see also Wegner v. Arnold*, 305 Ill. App. 3d 689, 713 N.E.2d 247, 250 (Ill. App. Ct. 1999) ("In cases in which an attorney who has done much work is fired immediately before settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." (citing *Rhoades*, 399 N.E.2d 969, 975)).

    Plaintiff claims that SLS engaged in unprofessional conduct and thus should not recover anything under *quantum meruit*. Where an attorney "clearly violated stated canons of ethics," the attorney's fees may be forfeited. *Leoris v. Dicks*, 150 Ill. App. 3d 350, 501 N.E.2d 901, 904 (Ill. App. Ct. 1986). The Court does not find adequate evidence of such egregious conduct here. Plaintiff claims that SLS did not meet its professional obligations during its representation of Plaintiff and thereafter, including allegedly failing to zealously represent Plaintiff, surreptitiously agreeing to dismiss this case, and not providing Plaintiff with her client file in a timely fashion.

Plaintiff provides no support for her claims other than her own sworn-to arguments, and has not explained how SLS's conduct was so poor as to prevent it from collecting a one-third fee for the legal work it provided Plaintiff since 2014, which culminated in a voluntary settlement between the parties. As this Court already found, Plaintiff was present at the settlement conference during which the parties agreed to settle both their state case and this federal case. (*See* ECF No. 43 at 8 ("Howard was present at the settlement conference and, based on all the evidence in the record, agreed to settle the claims herself rather than just through an attorney.").) Moreover, Plaintiff herself sought to keep SLS as her counsel even after the parties settled—it was SLS that sought and obtained leave to withdraw from its representation after Plaintiff refused to finalize the settlement. Though Plaintiff may now wish her case had turned out differently, her grievances, without more, are a far cry from professional misconduct that would justify preventing SLS from collecting a one-third portion of Plaintiff's settlement amount. *See Vandenberg v. RQM, LLC*, 2020 IL App (1st) 190544, 177 N.E.3d 718 (Ill. App. Ct. 2020) (upholding award of no fees in an "unusual case" where the representing law firm "had repeatedly breached its duty to the Vandenbergs throughout the attorney-client relationship").

      SLS's request for a full $55,050.48 based on *quantum meruit*—more than the one-third portion of the award it otherwise claims under its contingency-fee agreement—is excessive. SLS points to no case or other authority suggesting that an attorney may recover *more* under *quantum meruit* than the attorney would be entitled to under a prior fee agreement, and the Court has found none. Rather, in several jurisdictions, "[t]he amount recovered on a quantum meruit basis should be limited to no more than the amount that would be owed pursuant to the original contingent fee contract." 1 Robert L. Rossi, Attorneys' Fees § 3:12 (3d ed., updated June 2023) (collecting cases); *see also Wegner*, 713 N.E.2d at 251 (rejecting view "that an award of contract

fees to a discharged attorney as *quantum meruit* is limited only to cases where the amount of work done from an hourly fee standpoint is roughly equal to the contract fee"). Finding otherwise would create perverse incentives for attorneys to, for example, withdraw from contingency cases for which they are likely to recover less than they initially hoped, in order to void the relevant fee agreement and seek higher fees on a *quantum meruit* basis. SLS voluntarily entered into a contingency-fee agreement whereby it would receive one-third of Plaintiff's $92,500 settlement award, which is reasonable under the circumstances here. The Court will not grant SLS a windfall based on its withdrawal from the case, and concludes that the *quantum meruit* factors warrant awarding SLS $30,833.33—one-third of Plaintiff's $92,500 settlement award.

## Conclusion

The Court therefore grants in part and denies in part SLS's petition (ECF No. 47) and awards SLS $30,833.33 from the settlement deposit made by Defendant to the Clerk of the Court. The Court directs the Clerk to release $30,833.33 from the deposit to SLS and to release the remainder to Plaintiff.

**SO ORDERED.**

**ENTERED: October 17, 2023**

______________________________

**HON. JORGE ALONSO**

**United States District Judge**